UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

ANITA V.,[1]

                Plaintiff,

       v.

COMMISSIONER OF THE SOCIAL
SECURITY ADMINISTRATION,

              Defendant.

Case. No. 6:22-cv-01690-YY

OPINION AND ORDER

YOU, Magistrate Judge.

Plaintiff Anita V. seeks judicial review of the final decision by the Social Security
Commissioner ("Commissioner") denying her application for Disability Insurance Benefits
("DIB") under Title II of the Social Security Act ("SSA"), 42 U.S.C. §§ 401–33.  This court
has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g) and
§ 1383(c)(3).  For the reasons set forth below, the Commissioner's decision is AFFIRMED.

**PROCEDURAL HISTORY**

Plaintiff protectively filed a Title II application for disability insurance benefits on
July 10, 2019, alleging a disability onset date of December 31, 2017.  Tr. 13, 169–70.  The
Commissioner denied plaintiff's claim on February 26, 2020, and again upon

---

[1] In the interest of privacy, the court uses only plaintiff's first name and the first initial of
her last name.

reconsideration on October 16, 2020. Tr. 1–3. Plaintiff filed a written request for a hearing on September 1, 2021, and a hearing was held before an Administrative Law Judge ("ALJ") on July 22, 2021. Tr. 26–70. After receiving testimony from plaintiff and a vocational expert, the ALJ issued a decision, finding plaintiff not disabled within the meaning of the Act. Tr. 13–21. The Appeals Council denied plaintiff's request for review on September 13, 2022. Tr. 1–6. Thus, the ALJ's decision is the Commissioner's final decision and subject to review by this court. 42 U.S.C. § 405(g); 20 C.F.R. § 422.210.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). This court must weigh the evidence that supports and detracts from the ALJ's conclusion and "'may not affirm simply by isolating a specific quantum of supporting evidence.'" *Garrison v. Colvin*, 759 F.3d 995, 1009–10 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)). This court may not substitute its judgment for that of the Commissioner when the evidence can reasonably support either affirming or reversing the decision. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). Instead, where the evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld if it is "supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted); see also *Lingenfelter*, 504 F.3d at 1035.

## SEQUENTIAL ANALYSIS AND ALJ FINDINGS

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result

in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 404.1520; *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006) (discussing *Tackett v. Apfel*, 180 F.3d 1094, 1098–99 (9th Cir. 1999)).

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since her alleged onset date of December 31, 2017. Tr. 15. At step two, the ALJ determined plaintiff suffered from the following severe impairments: scoliosis and degenerative disc disease of the cervical and lumbar spine. Tr. 16.

At step three, the ALJ found plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. Tr. 17. The ALJ next assessed plaintiff's residual functional capacity ("RFC") and determined she could perform light work as defined in 20 C.F.C. § 404.1567(a), with the following limitations:

> [S]he can perform tasks involving up to 4 hours of standing/walking in an 8-hour workday (with normal breaks). She can occasionally climb ramps, stairs, ladders, ropes, or scaffolds. She can occasionally stoop. She can frequently kneel, crouch, or crawl.

*Id*.

At step four, the ALJ found plaintiff could perform past relevant work "within a composite job consisting of bookkeeper, sales clerk, and appointment clerk." Tr. 19. The ALJ found "[t]his work does not require the performance of work-related activities precluded by the [plaintiff]'s residual function capacity." Tr. 19-20.

At step five, the ALJ found that considering plaintiff's age, education, work experience, and RFC, she could perform jobs that existed in significant numbers in the national economy, including appointment and payroll clerk. Tr. 21. Thus, the ALJ

concluded plaintiff was not disabled at any time from December 31, 2017, through the date

of the ALJ's decision on August 27, 2021.  Tr. 21.

## DISCUSSION

Plaintiff argues the ALJ erred by rejecting her subjective symptom testimony and the

statements of her husband.

## I.    Subjective Symptom Testimony

When a claimant has medically documented impairments that could reasonably be

expected to produce some degree of the symptoms complained of, and the record contains

no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about

the severity of . . . symptoms only by offering specific, clear and convincing reasons for

doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (citation omitted).  A

general assertion that the claimant is not credible is insufficient; the ALJ must "state which .

. . testimony is not credible and what evidence suggests the complaints are not

credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).  The reasons proffered must

be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not

arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir.

1995) (internal citation omitted).  If the "ALJ's credibility finding is supported by

substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas

v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted).

Effective March 28, 2016, the Commissioner superseded Social Security Ruling

("SSR") 96-7p, governing the assessment of a claimant's "credibility," and replaced it with

SSR 16-3p.  *See* SSR 16-3p, *available at* 2016 WL 1119029.  SSR 16-3p eliminates the

reference to "credibility," clarifies that "subjective symptom evaluation is not an

examination of an individual's character," and requires the ALJ to consider all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. *Id.* at *1–2. The ALJ must examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4.

### A. Inconsistency with Medical Records

In evaluating a claimant's subjective symptom testimony, an ALJ may consider whether it is consistent with objective medical evidence. 20 C.F.R. §§ 404.1529(c)(1)-(3), 416.929(c)(1)-(3); SSR 16-3p, *available at* 2017 WL 5180304, at *7-8. The lack of objective medical evidence may not form the sole basis for discounting a claimant's testimony. *Tammy S. v. Comm'r Soc. Sec. Admin.*, No. 6:17-cv-01562-HZ, 2018 WL 5924505, at *4 (D. Or. Nov. 10, 2018) (citing *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) ("[T]he Commissioner may not discredit [a] claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence.")). However, "[w]hen objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." *Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022) (emphasis in original).

Plaintiff testified that she quit her job as office manager because her lower back was getting more and more painful. Tr. 43, 45. She claimed it was hard to focus and help customers when she was in a lot of pain, and her leg would go numb while she was standing. Tr. 49. Plaintiff described that she could stand for ten minutes before needing to

sit down.  Tr. 53.  Plaintiff explained that sitting helped to relieve the numbness and pain, but she was unable sit up straight and had to reposition herself by sitting on one side or the other.  Tr. 53.  She said driving was difficult it "requires just sitting still and sitting straight up," but if she was riding as a passenger, she could move around in her seat.  Tr. 52-53.  Plaintiff described that she had to lie down four times a day or more, for 15 minutes to a half hour each time.  Tr. 59.  She also had difficulty sleeping because she could not stay in one position in bed for any length of time.  Tr. 59.

The ALJ discredited plaintiff's testimony because it was inconsistent with the medical record, which the ALJ found did not reflect the severity of the symptoms that plaintiff claimed, and showed normal results in strength, gait, and other indicators.  Tr. 18.  Specifically, the ALJ observed that, on January 2, 2018, plaintiff "told her treatment provider that her back pain was aggravated by standing for prolonged periods – but that her discomfort did not radiate to her lower extremities."  *Id.* (citing Ex. 11F/21 ("Pain is not radiating.").  The ALJ noted that "[d]espite complaints of worsening back pain in September 2018, [plaintiff] reportedly demonstrated normal motor strength with only a 'slight' decrease in sensation in her left lower extremity."  Tr. 18 (citing Ex. 11F/19).  The ALJ also observed that plaintiff's "motor exam was otherwise characterized as 'normal,'" *id.*, her "[s]traight-leg raise testing was negative and her gait was within normal limits," *id.* (citing Ex. 11F/15), and she was not in "acute distress."  *Id.* (citing Ex. 11F/14).

The ALJ further noted that, in May 2019, plaintiff "endorsed pain and numbness in her left lower extremity – but only 'intermittently,'" and "acknowledged that she was 'healthy and relatively strong'" at the time.  Tr. 19 (citing Ex. 13F, 10).  Additionally, "[c]linical notes confirm [plaintiff] presented as 'well appearing' and in no acute distress."

*Id.* (citing Ex. 13F/11). "While she exhibited significant scoliosis, she denied any focal spinal tenderness," *id.*, and "[m]edical imaging revealed multilevel degenerative disc disease, but she nevertheless exhibited normal gait." *Id.* (citing Ex. 13F/7-8).

Finally, the ALJ observed that "newly obtained medical records" from January 2020 "indicate [plaintiff] complained of some increasing paresthesias down the left lower extremity – though these complaints apparently caused no significant gait disturbance," *id.* (citing Ex. 15F/2, 4), and "[b]y early 2021, [plaintiff] reportedly exhibited normal range of motion and presented in no acute distress." *Id.* (citing Ex. 5F/10). The ALJ concluded that the medical "evidence may justify certain physical limitations, but it is not indicative of a debilitating pain condition." Tr. 18.

The ALJ did not reach these conclusions in isolation. In fact, these are the same observations made by the state agency medical consultants, which the ALJ found were persuasive. Tr. 19. The state agency consultants opined that while plaintiff has some functional limitations, her claims were not fully supported. Tr. 74-75, 91-94. As the state agency physicians observed, "[t]here is no record that the claimant required and received intensive pain management including excessive narcotics, muscle relaxants, supervised PT, prescribed brace and ambulatory aid, Epidural or local steroids injections and or Tens unit to alleviate unrelenting pain for spine and joints." Tr. 77.

These observations are supported by the record. For example, on May 9, 2019, plaintiff described her pain as 4/10. Tr. 430. On June 24, 2019, plaintiff also told a doctor that she was experiencing "moderate" pain of 4/10. Tr. 400. Other records from that date show plaintiff told a nurse her pain level was 3/10, she was "[u]ncomfortable," and the "[p]ain bothers me but I can ignore it most of the time." Tr. 407. Chart notes indicate

plaintiff was receiving "conservative treatment" with a chiropractor.  Tr. 400.  The medical recommendation was that plaintiff should "[t]ry to stay active and exercise regularly," do PT exercises, and "[u]se heat, ice, [and] nsaids for pain control."  Tr. 402.  In January 2020, it was recommended that plaintiff "continue[] conservative treatment with PT and home exercise."  Tr. 286.  It was also suggested that plaintiff "consider facet blocks at L4/5 to see if this helps her pain"; however, there is no indication that plaintiff received any injections even though the option presented itself more than one time.  Tr. 286; *see also* Tr. 406 (June 2018 injections options discussed); Tr. 553 (June 2019 injection therapy discussed). Plaintiff may disagree with the ALJ's assessment of the record, but where it is a rational interpretation, it must be upheld.  *Thomas*, 278 F.3d at 954 (holding that where evidence susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld).

Plaintiff argues the ALJ "did not identify what evidence undermined the testimony that due to pain from her medically determinable impairments she would need to lie down during the day."  "[T]he ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony."  *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001).  "Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for [the Court] to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014).

Here, the ALJ noted that plaintiff "reported that she could only get relief from her symptoms by laying down during the day," as well as noting plaintiff's testimony that it was "difficult for her to sit or stand for any length of time due to chronic back pain" and that her "pain symptoms are sometimes so severe that she struggles to focus on tasks."  Tr. 18.  "The

ALJ then explained the specific reasons upon which [the ALJ's] conclusion was based."
*Young v. Saul*, 845 F. App'x 518, 519 (9th Cir. 2021).  In doing so, the ALJ "was not
required to mention explicitly, . . . each detail of [plaintiff's] testimony."  *Id.* (citing
*Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) ("Our cases do not require ALJs to
perform a line-by-line exegesis of the claimant's testimony. . . .").  Thus, the ALJ
committed no error here.

### B.    Activities of Daily Living

The ALJ also discredited plaintiff's testimony based on her activities of daily living.
Because the ALJ provided a specific, clear and convincing reason for rejecting plaintiff's
testimony, it is unnecessary to reach this issue.

## II.    Lay Witness Testimony

Plaintiff asserts the ALJ erred by failing to properly credit the lay-witness testimony
of her husband.  The ALJ must take into account lay testimony as to the severity of a
claimant's symptoms.  *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996).  The ALJ is
required to provide specific "reasons germane to each witness" for discounting their lay-
witness testimony.  *Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir. 2009).

Like plaintiff's testimony, the ALJ found the "observations of [plaintiff's] spouse"
were "inconsistent with the medical records" and therefore "not fully persuasive."  Tr. 19.
Where the ALJ did not err in discounting plaintiff's testimony on the basis it was
inconsistent with the medical records, the ALJ did not err in discounting plaintiff's
husband's statements for the same reason.

### ORDER

The Commissioner's decision is AFFIRMED.

DATED November 13, 2023.

_____/s/ Youlee Yim You_____
Youlee Yim You
United States Magistrate Judge